**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GEORGE BOUTROS,<br><br>    Plaintiff,<br><br>    v.<br><br>CORY HONY, et al.,<br><br>    Defendants. | No. 2:19-CV-1080-JAM-DMC<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, who is proceeding pro se, brings this civil rights action. Pending before the court is defendants' motion to dismiss plaintiff's first amended complaint. See ECF No. 43. The matter was submitted on the briefs without oral argument pursuant to Eastern District of California General Order 612.

**I. BACKGROUND**

This action was initiated with a complaint filed on June 13, 2019. See ECF No. 1. Plaintiff named the following as defendants: (1) Cory Hony, the Butte County Sheriff; (2) J.D. Jones, the Butte County Undersheriff; (3) Smith, a Butte County Deputy Sheriff; and (4) Dick Ramsey, the Butte County District Attorney. See id. at 1-3. Because plaintiff paid the filing fees for this case, the complaint was served without pre-screening by the Court. On August 2, 2019, defendants moved to dismiss the original complaint. See ECF No. 24.

Following briefing on defendants' motion, the Court issued findings and recommendations on November 22, 2019. See ECF No. 32. The Court summarized plaintiff's allegations as follows:

> Plaintiff states that he was attacked by his "angry white" neighbor on August 18, 2018. Plaintiff claims he was "creatively made a suspect by introducing the mental illness factor." According to plaintiff he complained and requested an internal investigation. Plaintiff states that, "shortly thereafter" he was arrested in a "51/50" hold for mental illness. Plaintiff claims this was done in retaliation for requesting an internal investigation regarding the August 2018 incident.
> Next, plaintiff alleges that he reported "another incident" to the Butte County Sheriff on September 2, 2018. According to plaintiff, he was threatened by a neighbor with a gun. Plaintiff states there was no follow-up on his report.
> Next, plaintiff claims his residence was robbed several times and his 911 calls went unanswered. Plaintiff states he gave Butte County Sheriff's Department officer Cooper a meth pipe that was left by the robber and that plaintiff was later arrested for possession of the pipe.
> According to plaintiff, he was denied protection and falsely arrested by the Butte County Sheriff's Department.
> Plaintiff's complaint makes no specific references to any of the named defendants.

Id. at 2.

The Court recommended that defendants' motion to dismiss be granted and that plaintiff be provided an opportunity to amend. See id. at 6. In doing so, the Court concluded:

> Here, the allegations of plaintiff's complaint make no reference to any of the four named defendants. Mere designation of defendants in the caption of the complaint, without specific allegations connecting the alleged wrongful acts to specified defendants, doses not satisfy the requirements for a proper pleading under Monell. As such, the complaint here fails to establish a causal connection between any defendant and a violation of plaintiff's civil rights. Plaintiff's complaint should be dismissed, with leave to correct the deficiencies through an amended pleading.

Id. at 5.

The District Judge assigned to this case adopted the November 22, 2019, findings and recommendations in full on January 24, 2020. See ECF No. 39. Thereafter, plaintiff filed his first amended complaint on January 29, 2020. See ECF No. 40.

///

///

///

2

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff names the following defendants in the first amended complaint: (1) Butte County Sheriff Honea (erroneously sued as "Hony" in the original complaint); (2) Lt. Smith; (3) Lt. Jones; and (4) DA Mike Ramsey. See ECF No. 40, pg. 1.

Plaintiff claims that he was the victim of a beating by "an angry white guy" on August 18, 2018. See id. at 4. According to plaintiff, Butte County sheriff's deputies Calkins labeled plaintiff "mental and aggressor" and attempted to charge plaintiff with a crime. See id. Plaintiff alleges that "BCSH [Butte County Sheriff Honea], the blond, blue eyed darling Madonna of butte county [sic], loves to parade more than policing, and or training well his deputies." Id. According to plaintiff, Sheriff Honea "was alerted to the situation and his reaction was that the P [plaintiff] was an asshole." Id. at 5.

Plaintiff states that he complained about the treatment he received and requested an internal affairs investigation. See id. According to plaintiff, an unknown sheriff's department agent, whom plaintiff describes as "poorly trained," led plaintiff to believe that he was conducting an internal affairs investigation. See id. Plaintiff states this individual "pulled what looked like a torn piece of toilet paper from his rear ass picket, scribbled legal waste on it, and said, 'Now we have an official investigation.'" Id. Plaintiff claims he contacted the sheriff's department to follow up and was told by defendant Jones that he was "frivolous and unfounded." Id.

Next, plaintiff complains that other deputies of the Butte County Sheriff's Department who are not named as defendants – deputies Lobb and Dickerson – "falsely 51/50-ed the P [plaintiff] in apparent retaliation." Id. Plaintiff alleges that defendant Honea has to date refused to "forward any of the documents, reports, or body video cams of that [August 18, 2018] incident to the P [plaintiff]." Id. In connection with this allegation, plaintiff further claims that defendant Honea "not only is a criminal operating under the color of law, he also is an obstructor." Id.

///
///

3

1    Plaintiff next claims that he was threatened with a gun "by an angry white guy"
2 on September 2, 2018, after that individual did what Plaintiff described as " a wheelie on a
3 property adjacent to his home. . . ." ECF No. 40, pg. 5.  It is unclear whether "his" refers to
4 plaintiff, the "angry white guy," or some other person.  Plaintiff states he called 911 and two
5 "poorly trained and discriminating" Butte County Sheriff's Department deputies arrived on the
6 scene, discriminated against him, denied him equal protection, and tried to charge him with the
7 "crime" plaintiff was perpetrated against him by the "white guy." Id. at 5-6.  Plaintiff alleges
8 these deputies "went on a discussion orgy with the white gun carrying threatening guy, on how
9 crazy the P [plaintiff] is." Id. at 6.  Plaintiff claims the deputies "tried to charge the brown crazy
10 sand nigger with the crimes of the white Felonious guy, AGAIN." Id.  Plaintiff characterizes
11 this alleged conduct as "legal rape." Id.

12    Next, plaintiff alleges:

> The P [plaintiff] was the victim of multiple home invasions/breakings/robberies.  All incidents were 911 called.  Only one time did BCSH [referring to defendant Honea] respond. Only once.  The rest of the time the P [plaintiff] was denied service.  Only once, the P [plaintiff] was served by BCSH.  And this was the service.  [¶] Deputy Brandon, another poorly trained and discriminating deputy of BCSH, arrests the P [plaintiff], the 911 caller, the "crazy sand nigger," because the P [plaintiff] offered to deputy Brandon evidence of the home invasion, a meth pipe dropped by the home invader/and robber.  The P [plaintiff] was hoping for a DNA test and an arrest on the invader, another white guy, instead, the P [plaintiff] gets arrested.  YOU READ THAT RIGHT.  The brown crazy sandniger [sic] gets arrested because the brown sand nigger was robbed by a white guy.  So P [plaintiff] gets arrested, but nothing happens after that no charges . . . nothing.  That was legal rape number 4, 5, and 6.

21    Id.

22    In what plaintiff says is "Legal Rape no 7," plaintiff states he was ambushed by
23 four "meth heads/criminals" and physically assaulted on March 5, 2019. Id. at 6-7.  According
24 to plaintiff, he was denied services by defendant Honea. See id. at 7.  Plaintiff next states that,
25 on March 8, 2019, he was again ambushed by two "meth heads/criminals that operated as muscle
26 for a known drug dealer in town, that operated out of Joshua's beauty salon on Feather River
27 / / /
28 / / /

4

BLVD and Montgomery." ECF No. 40, pg. 7. Plaintiff adds:

> . . .Fearing for his life, the P [plaintiff] fled his own home, called for help and then returned to the scene after finding some encouragement in the crowds that were building up.  P [plaintiff] yelled for people to call 911.  P [plaintiff] was running scared, yet did not want to see the two felons, two white felons flee the scene.  P [plaintiff] was chased by one of the felons, so P [plaintiff] fled and hid in the Wild River Park where he was arrested.

Id.

Plaintiff states he "had a history" with Joshua, the salon owner and alleged drug dealer, and Cyrus, also an alleged drug dealer, and their drug-running operation. Id. Plaintiff claims he was "busy cleaning the streets of Oroville as a community service" because the "street cleaner" – presumably referring to defendant Honea – was "busy parading." Id. Plaintiff adds:

> . . .BCSH [defendant Honea], because of his poor training and discriminatory practices, was let his town down, and the meth head garbage fill the street.  The P [plaintiff] somehow got entangled with the Joshua drug running operation and his muscle man, the white criminal Cyrus.

Id.

Next, plaintiff alleges he was in a "legal war" with Joshua's "drug operation" and was attempting to "serve papers" on Cyrus when Cyrus threatened plaintiff. Id. at 8. According to plaintiff, defendant Smith, a Butte County Sheriff's lieutenant, "refused to cooperate with CHP's request to get involved in arresting Cyrus. . . ." Id. In what plaintiff states is "legal rape 8," plaintiff claims: "The P [plaintiff] strongly believes, that Lt. Smith, did not want to cooperate with the CHP, because the criminal Cyrus is white, and the messenger was a brown and crazy sand nigger." Id.

Plaintiff states that he was arrested on March 8, 2019, denied a phone call, called names, insulted and humiliated, and not treated as innocent. See id. He states he was never asked for his version of events. See id. Plaintiff next describes "Legal rape 9":

> . . .P [plaintiff] was simply the victim of a white criminal, a white Cyrus protected by white criminals operating under the color of law. . . . Nothing happened for a long time after it.  No charges, no lets indict the crazy fluff in a hurry. . . nothing . . . simply another fake arrest and legal rape.

Id.

Next, plaintiff outlines his claims against defendant Ramsey, who is the Butte County District Attorney:

> DA Dick Ramsey, and the P [plaintiff] is not sure of the senile DA's name, through one of his agents, performed the following acts on the P [plaintiff]: Discrimination, false charging, false evidence, obstruction. [¶] DA Ramsey thru [sic] one of his agents, name unknown, never interviewed the P [plaintiff] in any of the above mentioned events, told the P [plaintiff] that he should be thankful to the DA for not charging the P [plaintiff] in the events mentioned. . . ., attempted to arrest the P [plaintiff] in relation to the events mentioned. . . . but did not go beyond an initial warrant draft, never prosecuted any of the more than 12 separate incidents where the P [plaintiff] was a victim and or charged the Victimizer. Instead, demented DA Dick Ramsey thru [sic] his agents has consistently, and repetitevly [sic] and always, tried to charge the "crazy brown sand nigger" with the crimes of the White felonious crminals [sic] that he is protecting. HOW Nauseating!
>
> ECF No. 40, pgs. 8-9.

In the next several pages of the first amended complaint, plaintiff alleges generally he was denied protection and falsely arrested. See id. at 9-10. According to plaintiff, his allegations establish a "tight criminal enterprise" between defendants Honea and Ramsey "where by [sic] white felonious individuals receive protection and the victim of different color is presented as mentally ill and maliciously falsely, and viciously prosecuted." Id. at 10.

Plaintiff next describes his treatment in the Butte County Jail. See id. at 11. According to plaintiff:

> . . .In that Jail, when the P [plaintiff] informed his jailer that he is not in the jail to eat, but rather to pay bail money and resolve an arrest warrant. The P [plaintiff] was ruthlessly and roughly stripped naked, and thrown naked in a 3x5 naked room with windows for eyes to pry. The P [plaintiff] was ridiculed, called a stupid ass hole [sic], denied attorney visit, phone call, stripped naked, not given bathroom breaks, not fed or watered. The P [plaintiff] swam in his urine at night at BCSH [referring to defendant Honea] spa. . . .
>
> Id.

///
///
///
///

6

1  Next, plaintiff contends the "legal rape continues" by "Demented Dick DA," presumably referring to defendant Dick Ramsey, the Butte County District Attorney. Id. According to plaintiff:

> . . .Last attempted rape, is when Deputy Brandon, responding to a 911 call by the P [plaintiff], who just got physically assaulted by an angry white neighbor boy.
>
> Deputy Brandon, agent of Butte county MADONNA, Butte County Sheriff Honea, told the P [plaintiff] that he, agent Brandon, believed that the white neighbor boy should have been arrested but was overruled by his superior that told him the DA will decide whether to arrest. YOUR HONOR. . . any takers for a bet that the demented DA Dick Ramsey, right now is contemplating another legal rape, as he has not yet decided whether to arrest the P [plaintiff] for the beating P [plaintiff] sustained on the hands of, and the crime of a white angry boy. This is RAPE 13.

Id. at 11-12.

Plaintiff alleges "Defendants" discriminated against him based on race. Id. at 12. Plaintiff also alleges "Defendants imposed fear and terror. . . ." Id. at 13. Finally, plaintiff contends "Defendants' actions were outrageous, extreme, and illegal," warranting punitive damages. Id.

### III. STANDARDS FOR MOTION TO DISMISS

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The Court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

///

7

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## IV.  DISCUSSION

Defendants contend the first amended complaint must be dismissed because: (1) plaintiff fails to allege facts to state a claim upon which relief can be granted; (2) the first amended complaint fails to comply with Federal Rule of Civil Procedure 8; (3) plaintiff fails to allege facts to establish supervisory liability against any named defendant; (4) defendant Ramsey is entitled to absolute prosecutorial immunity; and (5) defendant Honea, Smith, and Jones did not owe plaintiff any duty of protection.

**A.    Rule 8**

Defendants contend:

> Here, Plaintiff's FAC fails to give Defendants a fair opportunity to frame a responsive pleading and requires defendants and this Court to guess as to the claims being asserted and the bases for the claims. For example, the FAC continues to not specify against whom the causes of action are asserted, includes allegations against unidentified parties and unrelated entities, and includes entirely irrelevant allegations such as unrelated grievances and details regarding Plaintiff's criminal matters.

/ / /

/ / /

>    Defendants cannot discern what claims Plaintiff is asserting against them and cannot formulate a meaningful defense or response to the First Amended Complaint. . . .

ECF No. 43-1, pgs. 6-7.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

While plaintiff's first amended complaint is certainly not the model of clarity and conciseness one would expect of an experienced attorney, plaintiff is not an attorney and the Court declines to hold plaintiff to the same standard. See Haines, 404 U.S. at 520. And while the Court agrees with defendants that the first amended complaint contains references to a number of extraneous facts, considering plaintiff's pro se status the Court also does not find this factor to be a sufficient basis to recommend dismissal. Through their counsel, defendants are able to discern the salient facts which could form the basis of viable legal claims.

/ / /

/ / /

/ / /

It is clear from plaintiff's allegations that he believes defendant Honea was not doing a good job. While not directly relevant to possible legal theories, these allegations put other alleged facts in context. For example, plaintiff repeatedly alleges or infers that defendant Honea failed to adequately train his subordinates. In fact, defendants' argument discussed below that plaintiff's allegations fall short of establishing supervisory liability for claimed civil rights violations suggests the first amended complaint is sufficient enough to put defendants on notice of this claim and to allow them to formulate their defense.

### B. **Failure to State a Claim**

Defendants argue:

> Here, Plaintiff's FAC fails to state a claim upon which relief may be granted, as well as failing to state facts sufficient to state a claim. . . . Plaintiff's claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

ECF No. 43-1, pg. 6.

Because this argument is not further developed with any analysis of the facts alleged in the first amended complaint, or evaluation of the omissions that Defendant contends are at issue here, the Court declines to consider the charge that Plaintiff's FAC fails to state a claim.

### C. **Supervisor Liability**

Defendants argue plaintiff has failed to allege facts sufficient to a causal link between a constitutional violation and defendants Honea, Smith, and Jones, whom defendants state are supervisory personnel.

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See

Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); but see Johnson v. City of Vallejo, 99 F. Supp. 3d 1212, 1219 (E.D. Cal. 2015) (holding supervisory personnel may be liable for the constitution violations of subordinates if there is a sufficient nexus between such violations and the supervisor's own conduct). Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may, for example, be liable even where such personnel do not overtly participate in the offensive act. See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).

1.  Defendant Honea

The Court agrees with defendants that the first amended complaint continues to fail to establish a sufficient causal nexus between the conduct of defendant Honea and any civil rights violation. Defendant Honea, as the Butte County Sheriff, is a supervisory defendant. As such, he is not liable for the conduct of subordinates. Defendant Honea may only be held liable for this own conduct, such as implementation of a constitutionally deficient policy. As with the original complaint, the first amended complaint does not outline any specific conduct on the part

of defendant Honea.  Every reference to defendant Honea is made in the context of plaintiff's various encounters with deputies.

To the extent defendant Honea may be held liable for the conduct of his deputies alleged in the complaint, the Court finds that plaintiff has not alleged a sufficient causal nexus between such conduct and defendant Honea.  For example, plaintiff has not alleged that defendant Honea's deputies acted pursuant to any policy implemented by defendant Honea, let alone a policy so constitutionally deficient as to cause a civil rights violation.  Nor has plaintiff alleged that defendant Honea even knew of the alleged conduct of his deputies.  Finally, plaintiff has not alleged any facts to support a failure-to-train theory of liability, even if such a theory is viable.

### 2. Defendant Smith

As to defendant Smith, a lieutenant with the Butte County Sheriff's Department, plaintiff alleges failure to cooperate with the California Highway Patrol into investigation of what plaintiff characterizes as a "drug operation."  ECF No. 40, pg. 8.  According to plaintiff: "The P [plaintiff] strongly believes, that Lt. Smith, did not want to cooperate with the CHP, because the criminal Cyrus is white, and the messenger was a brown and crazy sand nigger."  Id.  Plaintiff, however, alleges no facts to indicate the basis of his belief.

In essence, plaintiff claims defendant Smith failed to investigate drug crimes allegedly committed by a white person because they were reported by plaintiff, who is not white.  This claim does not even suggest any violation of plaintiff's civil rights as the person reporting crimes, let alone a causal nexus between defendant Smith and such violation.  Plaintiff's unsupported belief fails to state a claim against defendant Smith.

### 3. Defendant Jones

According to plaintiff, he complained about improper treatment by sheriff's deputies and requested an internal investigation and that he was told an investigation would be conducted.  See ECF No. 40, pg. 5.  Plaintiff alleges that, when he called to follow up on the status of that investigation, he was told by defendant Jones that he was "frivolous and unfounded."  Id.  The Court agrees with defendants that these allegations fails to establish a causal nexus between defendant Jones' conduct and a constitutional violation.

**D.****Prosecutorial Immunity**

Defendants argue defendant Ramsey, the Butte County District Attorney, is entitled to absolute prosecutorial immunity. See ECF No. 43-1, pg. 9. The Court agrees. Plaintiff's allegations concerning defendant Ramsey all relate to his prosecutorial function of deciding whether to prosecute. When acting in a prosecutorial capacity, prosecutors in a district attorney's office enjoy the state's sovereign immunity from civil rights suits. See Del Camp v. Kennedy, 517 F.3d 1070, 1073 (9th Cir. 2008); see also Imbler v. Pachtman, 424 U.S. 409, 430 (1976). Defendant Ramsey should be dismissed with prejudice.

## V. CONCLUSION

Given the lower standard to which pro se litigants are held, and to the extent it remains possible that plaintiff may be able to allege facts which address the defects discussed above, the Court recommends plaintiff be granted a final opportunity to amend.

Based on the foregoing, the undersigned recommends that:

1. Defendants' motion to dismiss, ECF No. 43, be granted
2. Defendant Ramsey be dismissed with prejudice; and
3. Plaintiff be granted leave to amend as to his claims against the remaining defendants.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 23, 2020

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE