**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GEORGE BOUTROS, | No.  2:19-CV-1080-JAM-DMC |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| CORY HONY, et al., | |
| Defendants. | |

Plaintiff, who is proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is Defendants' motion to dismiss plaintiff's second amended complaint.  See ECF No. 58.  The matter was submitted on the briefs without oral argument.

## I.  BACKGROUND

### A.    Plaintiff's Original Complaint

This action was initiated with a complaint filed on June 13, 2019.  See ECF No. 1.  Plaintiff named the following as defendants: (1) Cory Hony, the Butte County Sheriff; (2) J.D. Jones, the Butte County Undersheriff; (3) Smith, a Butte County Deputy Sheriff; and (4) Dick Ramsey, the Butte County District Attorney.  See id. at 1-3.  Because Plaintiff paid the filing fees for this case, the complaint was served without pre-screening by the Court.  On

1

1   October 18, 2019, Defendants moved to dismiss the original complaint.  See ECF No. 24.

2   Following a hearing on Defendants' motion, the Court issued findings and

3   recommendations on November 22, 2019.  See ECF No. 32.  The Court summarized Plaintiff's

4   allegations as follows:

> Plaintiff states that he was attacked by his "angry white" neighbor on August 18, 2018.  Plaintiff claims he was "creatively made a suspect by introducing the mental illness factor."  According to plaintiff he complained and requested an internal investigation.  Plaintiff states that, "shortly thereafter" he was arrested in a "51/50" hold for mental illness.  Plaintiff claims this was done in retaliation for requesting an internal investigation regarding the August 2018 incident.
> Next, plaintiff alleges that he reported "another incident" to the Butte County Sheriff on September 2, 2018.  According to plaintiff, he was threatened by a neighbor with a gun.  Plaintiff states there was no follow-up on his report.
> Next, plaintiff claims his residence was robbed several times and his 911 calls went unanswered.  Plaintiff states he gave Butte County Sheriff's Department officer Cooper a meth pipe that was left by the robber and that plaintiff was later arrested for possession of the pipe.
> According to plaintiff, he was denied protection and falsely arrested by the Butte County Sheriff's Department.
> Plaintiff's complaint makes no specific references to any of the named defendants.

15  Id. at 2.

16  The Court recommended that Defendants' motion to dismiss be granted and that

17  Plaintiff be provided an opportunity to amend.  See id. at 6.  In doing so, the Court concluded:

> Here, the allegations of plaintiff's complaint make no reference to any of the four named defendants. Mere designation of defendants in the caption of the complaint, without specific allegations connecting the alleged wrongful acts to specified defendants, doses not satisfy the requirements for a proper pleading under Monell. As such, the complaint here fails to establish a causal connection between any defendant and a violation of plaintiff's civil rights. Plaintiff's complaint should be dismissed, with leave to correct the deficiencies through an amended pleading.

23  Id. at 5.

24  The District Judge assigned to this case adopted the November 22, 2019, findings and

25  recommendations in full on January 24, 2020.  See ECF No. 39.  Thereafter, Plaintiff filed his

26  first amended complaint on January 29, 2020.  See ECF No. 40.

27  / / /

28  / / /

2

1

      **B.**      **<u>Plaintiff's First Amended Complaint</u>**

2

      Plaintiff named the following defendants in the first amended complaint: (1)

3

Butte County Sheriff Honea (erroneously sued as "Hony" in the original complaint); (2) Lt.

4

Smith; (3) Lt. Jones; and (4) DA Mike Ramsey.  <u>See</u> ECF No. 40, pg. 1.  Defendants again

5

moved to dismiss.  <u>See</u> ECF No. 43.  On September 23, 2020, the Court issued findings and

6

recommendations addressing Defendants' motion to dismiss the first amended complaint.  <u>See</u>

7

ECF No. 49.  The Court summarized Plaintiff's allegations as follows:

8

      Plaintiff claims that he was the victim of a beating by "an
angry white guy" on August 18, 2018.  <u>See</u> ECF No. 40, pg. 4.  According

9

to plaintiff, Butte County sheriff's deputies Calkins labeled plaintiff
"mental and aggressor" and attempted to charge plaintiff with a crime.

10

<u>See id.</u>  Plaintiff alleges that "BCSH [Butte County Sheriff Honea], the
blond, blue eyed darling Madonna of butte county [sic], loves to parade

11

more than policing, and or training well his deputies."  <u>Id.</u>  According to
plaintiff, Sheriff Honea "was alerted to the situation and his reaction was

12

that the P [plaintiff] was an asshole."  <u>Id.</u> at 5.
      Plaintiff states that he complained about the treatment he

13

received and requested an internal affairs investigation.  <u>See id.</u>
According to plaintiff, an unknown sheriff's department agent, whom

14

plaintiff describes as "poorly trained," led plaintiff to believe that he was
conducting an internal affairs investigation.  <u>See id.</u>  Plaintiff states this

15

individual "pulled what looked like a torn piece of toilet paper from his
rear ass picket, scribbled legal waste on it, and said, 'Now we have an

16

official investigation.'"  <u>Id.</u>  Plaintiff claims he contacted the sheriff's
department to follow up and was told by defendant Jones that he was

17

"frivolous and unfounded."  <u>Id.</u>
      Next, plaintiff complains that other deputies of the Butte

18

County Sheriff's Department who are not named as defendants – deputies
Lobb and Dickerson – "falsely 51/50-ed the P [plaintiff] in apparent

19

retaliation."  <u>Id.</u>  Plaintiff alleges that defendant Honea has to date refused
to "forward any of the documents, reports, or body video cams of that

20

[August 18, 2018] incident to the P [plaintiff]."  <u>Id.</u>  In connection with
this allegation, plaintiff further claims that defendant Honea "not only is a

21

criminal operating under the color of law, he also is an obstructor."  <u>Id.</u>
      Plaintiff next claims that he was threatened with a gun "by

22

an angry white guy" on September 2, 2018, after that individual did what
Plaintiff described as "a wheelie on a property adjacent to his home. . . ."

23

ECF No. 40, pg. 5.  It is unclear whether "his" refers to plaintiff, the
"angry white guy," or some other person.  Plaintiff states he called 911

24

and two "poorly trained and discriminating" Butte County Sheriff's
Department deputies arrived on the scene, discriminated against him,

25

denied him equal protection, and tried to charge him with the "crime"
plaintiff was perpetrated against him by the "white guy."  <u>Id.</u> at 5-6.

26

Plaintiff alleges these deputies "went on a discussion orgy with the white
gun carrying threatening guy, on how crazy the P [plaintiff] is."  <u>Id.</u> at 6.

27

Plaintiff claims the deputies "tried to charge the brown crazy sand nigger
with the crimes of the white Felonious guy, AGAIN."  <u>Id.</u>  Plaintiff

28

characterizes this alleged conduct as "legal rape."  <u>Id.</u>

Next, plaintiff alleges:

> The P [plaintiff] was the victim of multiple home invasions/breakings/robberies.  All incidents were 911 called.  Only one time did BCSH [referring to defendant Honea] respond. Only once.  The rest of the time the P [plaintiff] was denied service.  Only once, the P [plaintiff] was served by BCSH.  And this was the service.  [¶] Deputy Brandon, another poorly trained and discriminating deputy of BCSH, arrests the P [plaintiff], the 911 caller, the "crazy sand nigger," because the P [plaintiff] offered to deputy Brandon evidence of the home invasion, a meth pipe dropped by the home invader/and robber.  The P [plaintiff] was hoping for a DNA test and an arrest on the invader, another white guy, instead, the P [plaintiff] gets arrested.  YOU READ THAT RIGHT.  The brown crazy sandniger [sic] gets arrested because the brown sand nigger was robbed by a white guy.  So P [plaintiff] gets arrested, but nothing happens after that no charges . . . nothing.  That was legal rape number 4, 5, and 6.

Id.

In what plaintiff says is "Legal Rape no 7," plaintiff states he was ambushed by four "meth heads/criminals" and physically assaulted on March 5, 2019.  Id. at 6-7.  According to plaintiff, he was denied services by defendant Honea.  See id. at 7.  Plaintiff next states that, on March 8, 2019, he was again ambushed by two "meth heads/criminals that operated as muscle for a known drug dealer in town, that operated out of Joshua's beauty salon on Feather River BLVD and Montgomery."  ECF No. 40, pg. 7.  Plaintiff adds:

> . . .Fearing for his life, the P [plaintiff] fled his own home, called for help and then returned to the scene after finding some encouragement in the crowds that were building up.  P [plaintiff] yelled for people to call 911.  P [plaintiff] was running scared, yet did not want to see the two felons, two white felons flee the scene.  P [plaintiff] was chased by one of the felons, so P [plaintiff] fled and hid in the Wild River Park where he was arrested.

Id.

Plaintiff states he "had a history" with Joshua, the salon owner and alleged drug dealer, and Cyrus, also an alleged drug dealer, and their drug-running operation.  Id.  Plaintiff claims he was "busy cleaning the streets of Oroville as a community service" because the "street cleaner" – presumably referring to defendant Honea – was "busy parading."  Id.  Plaintiff adds:

> . . .BCSH [defendant Honea], because of his poor training and discriminatory practices, has let his town down, and the meth head garbage fill the street.

The P [plaintiff] somehow got entangled with the
Joshua drug running operation and his muscle man, the
white criminal Cyrus.

Id.

Next, plaintiff alleges he was in a "legal war" with Joshua's "drug operation" and was attempting to "serve papers" on Cyrus when Cyrus threatened plaintiff. Id. at 8. According to plaintiff, defendant Smith, a Butte County Sheriff's lieutenant, "refused to cooperate with CHP's request to get involved in arresting Cyrus. . . ." Id. In what plaintiff states is "legal rape 8," plaintiff claims: "The P [plaintiff] strongly believes, that Lt. Smith, did not want to cooperate with the CHP, because the criminal Cyrus is white, and the messenger was a brown and crazy sand nigger." Id.

Plaintiff states that he was arrested on March 8, 2019, denied a phone call, called names, insulted and humiliated, and not treated as innocent. See id. He states he was never asked for his version of events. See id. Plaintiff next describes "Legal rape 9":

. . .P [plaintiff] was simply the victim of a white
criminal, a white Cyrus protected by white criminals
operating under the color of law. . . . Nothing happened
for a long time after it. No charges, no lets indict the
crazy fluff in a hurry. . . nothing . . . simply another
fake arrest and legal rape.

Id.

Next, plaintiff outlines his claims against defendant Ramsey, who is the Butte County District Attorney:

DA Dick Ramsey, and the P [plaintiff] is not
sure of the senile DA's name, through one of his agents,
performed the following acts on the P [plaintiff]:
Discrimination, false charging, false evidence,
obstruction. [¶] DA Ramsey thru [sic] one of his
agents, name unknown, never interviewed the P
[plaintiff] in any of the above mentioned events, told
the P [plaintiff] that he should be thankful to the DA for
not charging the P [plaintiff] in the events mentioned. . .
., attempted to arrest the P [plaintiff] in relation to the
events mentioned. . . . but did not go beyond an initial
warrant draft, never prosecuted any of the more than 12
separate incidents where the P [plaintiff] was a victim
and or charged the Victimizer. Instead, demented DA
Dick Ramsey thru [sic] his agents has consistently, and
repetitevly [sic] and always, tried to charge the "crazy
brown sand nigger" with the crimes of the White
felonious crminals [sic] that he is protecting. HOW
Nauseating!

ECF No. 40, pgs. 8-9.

///

5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In the next several pages of the first amended complaint, plaintiff alleges generally he was denied protection and falsely arrested. See id. at 9-10.  According to plaintiff, his allegations establish a "tight criminal enterprise" between defendants Honea and Ramsey "where by [sic] white felonious individuals receive protection and the victim of different color is presented as mentally ill and maliciously falsely, and viciously prosecuted." Id. at 10.

Plaintiff next describes his treatment in the Butte County Jail.  See id. at 11.  According to plaintiff:

> . . .In that Jail, when the P [plaintiff] informed his jailer that he is not in the jail to eat, but rather to pay bail money and resolve an arrest warrant.  The P [plaintiff] was ruthlessly and roughly stripped naked, and thrown naked in a 3x5 naked room with windows for eyes to pry.  The P [plaintiff] was ridiculed, called a stupid ass hole [sic], denied attorney visit, phone call, stripped naked, not given bathroom breaks, not fed or watered.  The P [plaintiff] swam in his urine at night at BCSH [referring to defendant Honea] spa. . . .

Id.

Next, plaintiff contends the "legal rape continues" by "Demented Dick DA," presumably referring to defendant Dick Ramsey, the Butte County District Attorney.  Id.  According to plaintiff:

> . . .Last attempted rape, is when Deputy Brandon, responding to a 911 call by the P [plaintiff], who just got physically assaulted by an angry white neighbor boy.
>
> Deputy Brandon, agent of Butte county MADONNA, Butte County Sheriff Honea, told the P [plaintiff] that he, agent Brandon, believed that the white neighbor boy should have been arrested but was overruled by his superior that told him the DA will decide whether to arrest.  YOUR HONOR. . . any takers for a bet that the demented DA Dick Ramsey, right now is contemplating another legal rape, as he has not yet decided whether to arrest the P [plaintiff] for the beating P [plaintiff] sustained on the hands of, and the crime of a white angry boy.  This is RAPE 13.

Id. at 11-12.

Plaintiff alleges "Defendants" discriminated against him based on race.  Id. at 12.  Plaintiff also alleges "Defendants imposed fear and terror. . . ."  Id. at 13.  Finally, plaintiff contends "Defendants' actions were outrageous, extreme, and illegal," warranting punitive damages.  Id.

/ / /

/ / /

/ / /

6

1    The Court recommended Defendants' motion to dismiss the first amended

2  complaint be granted and that Plaintiff again be provided an opportunity to amend.  See ECF No.

3  49.  The Court concluded that Plaintiff's first amended complaint failed to state a claim against

4  Defendants Honea, Smith, Jones, or Ramsey.  See id.  On November 23, 2020, the District Judge

5  adopted the September 23, 2020, findings and recommendations in full.  See ECF No. 51.  In

6  particular, the Court dismissed Defendant Ramsey with prejudice and granted Plaintiff leave to

7  file a second amended complaint as to his claims against the remaining defendants.  See id.

8  Plaintiff filed his second amended complaint on December 3, 2020.  See ECF No. 55.

9

10              **II.  PLAINTIFF'S ALLEGATIONS**

11    This action currently proceeds on Plaintiff's second amended complaint.  See

12  ECF No. 55.  Plaintiff names the following as defendants: (1) Honea; (2) Smith; (3) Jones; (4)

13  Calkins; (5) Lobb; (6) Dickerson; and (7) Brandon.  See id. at 1.  Plaintiff states all defendants

14  are members of the Butte County Sheriff's Department.  See id. at 3.

15    In a recitation of fact strikingly similar to the first amended complaint, Plaintiff

16  outlines the following numbered allegations:

17        1.    Plaintiff was the victim of a beating by an "angry white
        neighbor" on August 18, 2018.  See id. at 4.  Butte County deputy sheriff
18        Matt Calkins responses and, instead of protecting Plaintiff, "zeroed in on
        the Plaintiff's ALLEGED mental state, labeled him mental aggressor" and
19        tried to charge Plaintiff with the crime committed by the neighbor.  Id.
        Plaintiff contends Defendant Calkins tried to falsely accuse Plaintiff of a
20        crime.  See id.  Plaintiff cites Exhibit A attached to the first amended
        complaint.  See id.
21
        2.    Plaintiff complained and requested an internal affairs
22        investigation.  See id. at 4-5.  According to Plaintiff, an unknown
        "'internal affairs' guy" pulled "what looked like a torn toilet piece of
23        paper from his rear ass packer, scribbled legalwaste [sic] on it, and said,
        'Now' we have an official investigation."  Id. at 5.  When Plaintiff later
24        called to inquire about the status of the investigation, he was told by
        Defendant Jones it had been deemed frivolous.  See id.  Plaintiff cites
25        Exhibit B attached to the first amended complaint.  See id.

26        3.    Plaintiff states that, two weeks following the August 18,
        2018, incident, Butte County deputy sheriffs Lobb and Dickerson "51/50-
27        ed" Plaintiff "in an apparent retaliation."  Id.  This is an apparent reference
        to California Welfare and Institutions Code § 5150 which allows for
28        involuntary confinement of a person for up to 72 hours for psychiatric

evaluation.  According to Plaintiff, "[t]hey did not succeed."  Id.  Plaintiff cites Exhibit C attached to the first amended complaint.  See id.

4.      Next, Plaintiff states that, after doing a wheelie on property adjacent to his home on September 2, 2018, Plaintiff was again threatened by a "white neighbor," this time with a gun.  Id.  It is unclear whether this is the same neighbor involved in the August 18, 2018, incident alleged above.  Plaintiff states that, once again, responding Butte County deputy sheriffs "discriminated against P [Plaintiff], denied him equal protection, and tried to charge him with the crime of the white neighbor, the victimizer."  Id.  According to Plaintiff, the deputies, who included Defendant Lobb, "went on a discussion orgy with the white gun carrying threatening guy, on how crazy the P is" instead of "offering equal protection to a brown American citizen [presumably Plaintiff]."  Id. at 5-6.  Plaintiff cites Exhibit D attached to the first amended complaint.  See id.

5.      Plaintiff next claims that he has been the victim of multiple home invasions/ robberies, all of which he complained of, but that Butte County deputies only responded once.  See id. at 6.  According to Plaintiff, deputy Brandon, a defendant herein, arrested Plaintiff on possession of drug paraphernalia Plaintiff states was left on his porch by the home invader, described as "another white guy."  Id.  Plaintiff adds: "The brown crazy sand nigger gets arrested because the brown sand nigger was robbed by a white guy to P gets arrested, but nothing happens after that. . . ."  Id.  Plaintiff cites Exhibit E attached to the first amended complaint.  See id.

6.      Plaintiff states that multiple claims were filed with the county and were all "quickly denied."  Id.  Plaintiff cites Exhibit F attached to the first amended complaint.  See id.

7.      Plaintiff contends that he was ambushed by "4 meth heads" and physically assaulted on March 5, 2019.  See id.  Plaintiff says he was denied service.  See id.  Plaintiff cites Exhibit G attached to the first amended complaint.  See id.

8.      Plaintiff states that he was again ambushed on March 8, 2019, this time by two "meth heads."  Id. at 6-7.  According to Plaintiff, the assailants operated as "muscle for a known drug dealer in town, that operated out of Joshua's beauty salon on Feather River BLVD and Montgomery."  Id. at 7.  Plaintiff states that he feared for his safety and fled to the Wild River Park "where he [presumably Plaintiff] was arrested."  Id.
Plaintiff next describes a series of events related to the two "meth heads" and their interaction with Oroville Police Department officers.  See id.  Plaintiff states that he "had a history" with one the "meth heads," whom Plaintiff identifies as Cyrus, and Joshua, whom Plaintiff states is the drug dealer in town.  Id.  According to Plaintiff: "The P somehow got entangled with the Joshua drug running operation and his muscle man, the shite criminal Cyrus."  Id.  Plaintiff states that Cyrus has threatened him tried to ambush Plaintiff at his home, attempted to extort Plaintiff, and filed false police reports against him.  Id.

///

Plaintiff claims Cyrus is the "star witness in a retaliatory prosecution that the corrupted DA's officer is engaged in." Id.  Here, Plaintiff references "Exhibit One" attached to the second amended complaint.  See id. at 8.  Plaintiff states that Defendant Smith, also a Butte County deputy sheriff, "did not want cooperate with CHP, because the criminal Cyrus is white, and the messenger was a brown and crazy sand nigger."  Id.  Plaintiff cites Exhibits H and J attached to the first amended complaint.  See id.

9.	Plaintiff states that he was arrested on March 8, 2019.  See id.  Without reference to any named defendant, Plaintiff claims he was denied a phone call, called names, humiliated, and not treated as innocent.  See id.  Plaintiff states he was never asked his version of events.  See id.  Plaintiff claims he was the victim of a white criminal being protected by white criminals.  See id.  Plaintiff characterizes this arrest as "fake."  Id.  Plaintiff cites Exhibit K attached to the first amended complaint.  See id.

10.	Plaintiff next outlines allegations against Ramsey, the Butte County District Attorney, who has been dismissed from this action with prejudice.  See id. at 8-9.

11.	According to Plaintiff, the Butte County Sheriff, Defendant Honea, "was alerted to the situation [presumably the situation outlined in item 10] and his reaction was that the P was an asshole."  Id. at 9.

12.	Plaintiff states that he filed a small claims action on April 25, 2019, against the arresting officer, K. Adams (who is not a defendant named herein).  See id.  According to Plaintiff, the judge "suggested a federal action."  Id.

13.	Next Plaintiff alleges: "On June the 4th, Claim for damages was filed with the County of Butte, after the P was informed by his attorney that the demented DA [now-dismissed Ramsey] wants to proceed with the false murder change against the P."  Id.

14.	Plaintiff alleges that he was "denied protection" by Defendant Honea and the District Attorney's office on multiple occasions.  Id.  According to Plaintiff, he has been robbed of almost $100,000 in cash and other valuables with no response from Defendant Honea.  See id.  He further states that he has been assaulted and terrorized on multiple occasions, also with no response from Defendant Honea.  See id.

15.	Plaintiff contends that he was "falsely arrested while Pro Se as a victim."  Id. at 10.  Specifically, Plaintiff claims he was falsely arrested by Brandon.  See id.  Plaintiff states: "Instead of suing the [meth] pipe as evidence of a crime, in December of 2018 P was arrested for the fake charge of 'Meth Pipe Possession.'"  Id.  Plaintiff states no charges were pursued.  See id.

16.	Plaintiff alleges he was falsely arrested "based on a white criminal 'He said.'"  Id.  According to Plaintiff: "The Nigger victim/plaintiff was not even asked one single question."  Id.  Plaintiff references events of March 8, 2019.  See id.  Plaintiff adds: "It was another case of a white boy and a sand nigger victim."  Id.

17.    Plaintiff states he was "denied protection and almost falsely charged. . . when P's felonious white neighbor pummeled P's head on 8/18/18." Id.

18.    Plaintiff alleges Defendant Honea has acted under color of law and denied him "protection based on discrimination on racial and mental illness grounds." Id.

19.    Plaintiff contends that Defendant Honea "on multiple occasions has protected the White Criminal, and further victimized the victim by retaliating with false fake charges, and arrests." Id.

20.    According to Plaintiff, Defendant Honea and "the demented DA Dick [Ramsey]" have perfected the art of citizen intimidation. Id.

21.    Next, Plaintiff claims that, in retaliation for filing complaints, Ramsey "performs a legal jesus act, resurrects a dead legal 6 month old issue, the ambush events of March 8 of 2019" and "has the audacity to tell the judge, that the P is so crazy, so dangerous, it is very important to put the crazy sand nigger in jail now now now, and deny him bond." Id. at 11. Plaintiff cites Exhibit M attached to the first amended complaint. See id.

22.    Plaintiff next complains of conditions of confinement at the Butte County Jail. See id. Plaintiff states that he was "not in the jail to eat, but rather to pay bail money and resolve an arrest warrant." Id. According to Plaintiff, he was "ruthlessly and roughly stripped naked, and thrown naked in a 3x5 naked room with windows for eyes to pry." Id. He states that he was ridiculed, called a "stupid ass hole," denied attorney visits, a phone call, stripped naked, not given bathroom breaks, and not fed or watered. See id. Plaintiff adds: "The P swam in his urine that night." Id. Plaintiff cites Exhibit N attached to the first amended complaint. See id. at 12.

23.    Finally, Plaintiff alleges that sheriff's deputy Brandon, responded to Plaintiff's 9-1-1 call in which Plaintiff complained of being physically assaulted "by an angry white neighbour [sic] boy." Id. According to Plaintiff, Brandon told Defendant Honea that Brandon believed the "white neighbour [sic] boy" should have been arrested "but was overruled by his superiors that told him the DA will decide whether to arrest." Id.

None of the lettered exhibits cited in the second amended complaint is attached.

Attached to the second amended complaint is "Exhibit One," which appears to be a motion

Plaintiff filed in October 2020 in the context of Butte County Superior Court case no.

19CF03638. See id. at 18-22.

/ / /

/ / /

10

Plaintiff contends the facts alleged give rise to the following claims:

Cause of Action A – Discrimination Against a Protected Entity.

Cause of Action B – Due Process Violations.

Cause of Action C – Retaliatory Prosecution.

Cause of Action D – Deliberate Indifference.

See id. at 13-17.

### III.  STANDARDS FOR MOTION TO DISMISS

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The Court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

/ / /

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## IV. DISCUSSION

In their motion to dismiss, Defendants argue: (1) Plaintiff's second amended complaint fails to comply with the Court's prior rulings; (2) Plaintiff's second amended complaint fails to state any substantive claims upon which relief can be granted; and (3) Plaintiff continues to fail to allege sufficient facts to establish supervisor liability as against Defendants Honea, Jones, or Smith. See ECF No. 58-1.

Before addressing these arguments, the Court first observes that the second amended complaint violates Eastern District of California Local Rule 220 governing amended pleadings. Local Rule 220 provides: "Unless prior approval to the contrary is obtained from the Court, every pleading to which an amendment or supplement is permitted as a matter of right or has been allowed by court order shall be retyped and filed so that it is complete in itself without reference to the prior or superseded pleading." Id. (emphasis added). Here, Plaintiff's second amended complaint references various exhibits which were attached to the first amended complaint, but which are not attached to the second amended complaint. The Court has not provided prior approval for Plaintiff to reference or rely on a superseded pleading in the second amended complaint. The following discussion, therefore, will be based on the allegations in the second amended complaint without reference to the exhibits cited therein but not attached.

### A.   Compliance with Prior Rulings

According to Defendants, Plaintiff has failed to comply with the Court's prior rulings in two ways. First, contrary to the Court's prior rulings, he has named new defendants in the second amended complaint. See id. at 6. Second, the second amended complaint contains allegations against Michael Ramsey, who has been dismissed with prejudice. See id.

/ / /

/ / /

1          1.        Allegations Against New Defendants

2     Defendants contend:

3          Federal Rule of Civil Procedure Rule 15(a)(2) states "a party may
      amend its pleading only with the opposing party's written consent or the
4     court's leave. The court should freely give leave when justice so requires."
      This Court's Findings and Recommendations on September 23, 2020
5     stated that Plaintiff should be "granted a final opportunity to amend" and
      recommended "(3) Plaintiff be granted leave to amended as to his claims
6     **against the remaining defendants."** (emphasis added) (ECF 49
      page 13)
7          The four new Defendants should be dismissed because they were
      added without stipulation or court order. Plaintiff cannot assert claims
8     against these Defendants' and the Court should strike the four newly
      added Defendants in the SAC and only consider the claims against
9     Defendants Honea, Jones and Smith.

10    ECF No. 58-1, pg. 6 (emphasis in original).

11         Defendants' argument is persuasive.  Since the inception of this case, Plaintiff has

12    consistently named the same defendants – Honea, Jones, Smith, and Ramsey.[1]  Plaintiff has never

13    sought leave to amend to add any other defendants, and Defendants have never stipulated to such

14    an amendment.  As Defendants note, the Court's findings and recommendations addressing

15    Defendants' motion to dismiss Plaintiff's first amended complaint specifically recommended

16    dismissal of Defendant Ramsey and "leave to amend as to his claims against the remaining

17    defendants."  ECF No. 49, pg. 13.  The findings and recommendations were adopted in full by the

18    District Judge.  See ECF No. 51.  The defendants who are newly named for the first time in the

19    second amended complaint – Calkins, Lobb, Dickerson, and Brandon – should be dismissed.

20         2.        Allegations Against Michael Ramsey

21    According to Defendants:

22         Plaintiff includes numerous allegations against former Defendant,
      Butte County District Attorney Michael L. Ramsey. (ECF 55, pages 8-12)
23    This Court already found that Butte County District Attorney Michael L.
      Ramsey was protected under absolute prosecutorial immunity and
24    "should be dismissed with prejudice." (ECF 49 page 13) All claims
      against Butte County District Attorney Michael L. Ramsey in the SAC
25    must be dismissed.

26    ECF No. 58-1, pg. 6.

27    _____

          [1]    Ramsey has been dismissed with prejudice.  See ECF No. 51.
28

13

Defendants accurately note, as outlined above, that Ramsey has been dismissed with prejudice as a defendant from this lawsuit based on his prosecutorial immunity.  There is no need, however, for the relief Defendants now seek – dismissal of all claims against Ramsey in the second amended complaint – because Plaintiff does not name Ramsey as a defendant in the second amended complaint.  Notwithstanding Plaintiff's references to Ramsey in the second amended complaint, Ramsey is simply no longer a defendant to this action, both by way of the Court's prior rulings and Plaintiff's decision not to name him in the current operative pleading.

**B.      Failure to State a Claim**

As outlined above, Plaintiff states his second amended complaint gives rise to the following claims:

Cause of Action A – Discrimination Against a Protected Entity.

Cause of Action B – Due Process Violations.

Cause of Action C – Retaliatory Prosecution.

Cause of Action D – Deliberate Indifference.

See ECF No. 55, pgs. 13-17.

Defendants contend the second amended complaint fails to state sufficient facts to raise a claim for relief against them under any of these theories.  See ECF No. 58-1, pgs. 7-13.

1.      Discrimination Against a Protected Entity

For Cause of Action A, Plaintiff alleges as follows in the second amended complaint:

> P argues that the defendants did 1 thru 23 under statement of facts.  As such, and under the color of the law, the Defendants discriminated against a brown, seemingly mentally ill American citizen, by breaching his civil rights, consistently, repetitively, in a careless and ruthless manner, denied him protection, defamed him, falsely arrested him on 3 occasions for intimidation and retaliation. . . .

ECF No. 55, pg. 14.

Plaintiff's claim of discrimination arises under the Equal Protection Clause of the Fourteenth Amendment.  Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state

14

1   purpose.  See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972).  In order to state a

2   § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a

3   plaintiff must allege that defendants acted with intentional discrimination against plaintiff, and

4   that such conduct did not relate to a legitimate state purpose.  See Village of Willowbrook v.

5   Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class

6   of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v.

7   Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940

8   F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

9            Defendants contend Plaintiff's claims are "conclusory and without factual basis as

10  to Plaintiff's membership in a protected class."  ECF No. 58-1, pg. 8.  According to Defendants:

11  ". . .Plaintiff does not plead any facts regarding his age, nationality, ethnicity. . . ."  Id.  The Court

12  does not agree.  As Defendants note in their motion, Plaintiff makes repeated references to

13  alleged racial status throughout the second amended complaint.  See e.g. ECF No. 55, pg. 4, ¶ 1.

14  Liberally construing the allegations in the second amended complaint and drawing reasonable

15  inferences in Plaintiff's favor, the Court finds this reference sufficient to establish Plaintiff's

16  membership in a protected class, either by virtue of nationality, ethnicity, or both.

17           Defendants also argue that "[t]here in no indication in the rest of the Complaint

18  that because of Plaintiff's protected class, he was treated any differently that [sic] other similarly

19  situated resident [sic] of Butte County. . . ."  Again, the Court does not agree.  Plaintiff alleges

20  consistently throughout the second amended complaint that he was treated differently because of

21  his nationality and/or ethnicity.  For example, Plaintiff claims that he was arrested even though he

22  was the victim of a crime by a "white guy."  Id. at 6, ¶ 5.  It is reasonable to infer that Plaintiff,

23  who is alleged to be a member of a protected class, was arrested instead of the "white guy"

24  perpetrator because the perpetrator was white and Plaintiff is not.  More directly, Plaintiff also

25  alleges: "The P strongly believes, that Lt. Smith, did not want to cooperate with CHP, because the

26  criminal Cyrus is white, and the messenger was a brown and crazy sand nigger."  Id. at 6-8, ¶ 8.

27  Again, it can reasonably be inferred from this allegation that Plaintiff was treated differently on

28  account of nationality, ethnicity, and/or race.

1        The Court finds that the second amended complaint pleads sufficient facts to state

2   an equal protection claim.  Whether Plaintiff has linked the alleged equal protection violation to

3   any of the three properly named defendants – Honea, Smith, or Jones – is discussed below.

4                2.      Due Process

5        Plaintiff alleges as follows in Cause of Action B:

6           P. argues that the defendants did 1 thru 23 under statement of facts.  As
            such, and under the color of the law, the Defendants discriminated against
7           a brown, seemingly mentally ill American citizen, and under the pretense
            of them "worrying" about the mental state of P, and under the color of the
8           law, deprived P of his constitutional rights of multiple occasions, last of
            which is the aggregious [sic].  To strip a proud citizen of his cloth, an
9           immigrant belonging to a different culture, whereby such agression [sic] is
            severely felt by the victim (it felt like rape to P), when he was in their jail
10          to process bail, and then let him swim in his body fluids in their so called
            "suicide watch" (a god damn &^%$%^& up behavior of the Sheriff) is but
11          an agregious [sic] denial of due process.  Also, the P was denied his phone
            call and his attorney was prevented from meeting with his client.  This
12          "suicide prevention" routine, the BCSH [Butte County Sheriff Honea]
            loves to see happen in his jail is a SUICIDE MAKER. . . .  Shame shame
13          shame on Honea and on the prison system that still. . . to 1 date. . . now
            2020, still barbaric routines borrowed from some mideavel [sic] torture
14          book, are practiced at Honea's &*^%$^ jail.  Honea should receive this
            treatment Before it is terminated. . . .
15
            ECF No. 55, pgs. 14-15.
16

17       Defendants' contentions regarding Plaintiff's due process claim are unconvincing.

18   Defendants begin their analysis with a recitation of legal principles related to due process claims.

19   See ECF No. 58-1, pgs. 9-10.  Defendants note that the Fourteenth Amendment guarantees due

20   process and that the first inquiry in any due process challenge is whether there is a protected

21   liberty or property interest at stake.  See id. at 9.  Defendants conclude that Plaintiff's due process

22   claim necessarily fails because "Plaintiff does not link any due process violation to any of the

23   named Defendants [Honea, Jones, and Smith]."  Id. at 10.  Notably Defendants do not contend

24   that Plaintiff has failed to allege a protected liberty interest.

25       The Court finds that Defendants have not presented a compelling argument upon

26   which to conclude that Plaintiff has failed to plead sufficient facts to establish generally a due

27   process violation.  Whether Plaintiff has alleged a sufficient causal connection to any of the

28   properly named defendants is discussed below.

3.     Retaliatory Prosecution

In Cause of Action C, Plaintiff claims:

> P argues that the defendants did 1 thru 23 under statement of facts.  As such, and under the color of the law, the Defendants discriminated against a brown, seemingly mentally ill American citizen, and under the pretense of them "worrying" about the mental state of P, and under the color of the law, deprived P of his constitutional rights of multiple occasion, and subjected him to denial of protection, three false arrests, false charges, and OBSTRUCTION OF LEGALLY SUBPOENED POLICE OFFICER.  These behaviours [sic] are extreme and outrageous and SHOCKING.  This is simply retaliatory prosecution by law enforcers, who simply grew very comfortable in their corrupted world, just like disease fungus grows comfortably in a piece of human waste. . . .

ECF No. 55, pg. 15.

In Hartman v. Moore, the Supreme Court held that, to succeed on a claim of retaliatory prosecution, the plaintiff must establish the lack of probable cause.  See 547 U.S. 250, 264 (2006).  Retaliatory prosecution claims are only appropriate against the prosecutor.  See id. Here, Plaintiff clearly labels his claim as one for retaliatory prosecution.  The claim necessarily fails because the Plaintiff no longer names any prosecutors in the second amended complaint.

4.     Deliberate Indifference

Finally, in Cause of Action D, Plaintiff repeats his statement for Cause of Action C.  See ECF No. 55, pgs. 15-16.

Given that Plaintiff's Cause of Action C and Cause of Action D are identical, they are necessarily subsumed within each other.  As discussed above, Cause of Action C fails because Plaintiff has not named any prosecutors in this action.  Thus, to the extent Plaintiff alleges that the retaliatory prosecution was deliberate and demonstrated an indifference to his rights, Cause of Action D also fails.  Plaintiff's legally conclusory use of the words "deliberate indifference," unsupported by actual factual allegations, need not be accepted.  See Iqbal, 129 S. Ct. at 1949-50.

## C.     Supervisor Liability

Supervisory personnel are generally not liable under § 1983 for the actions of their employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations.  See id.  The

17

1    Supreme Court has rejected the notion that a supervisory defendant can be liable based on

2    knowledge and acquiescence in a subordinate's unconstitutional conduct because government

3    officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct

4    and not the conduct of others.  See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  Supervisory

5    personnel who implement a policy so deficient that the policy itself is a repudiation of

6    constitutional rights and the moving force behind a constitutional violation may, however, be

7    liable even where such personnel do not overtly participate in the offensive act.  See Redman v.

8    Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

9             When a defendant holds a supervisory position, the causal link between such

10   defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v.

11   Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.

12   1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in

13   civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th

14   Cir. 1982).  "[A] plaintiff must plead that each Government-official defendant, through the

15   official's own individual actions, has violated the constitution."  Iqbal, 662 U.S. at 676.

16             Defendants argue generally:

17             Here, Plaintiff's SAC fails to state a claim for supervisory liability
                as to Defendants Sheriff Honea, Undersheriff Jones, or Lt. Smith. Plaintiff
18             continues to fail to establish a sufficient causal nexus between the conduct
                of Defendant Sheriff Honea and any civil rights violation. At the outset,
19             Plaintiff did not change his allegations or include additional facts against
                the remaining Defendants in the FAC—which this Court already ruled and
20             granted the Motion to Dismiss.

21             ECF No. 58-1, pg. 14

22             In addressing the sufficiency of Plaintiff's allegations in the first amended

23   complaint against the supervisory defendants named in this case – Honea, Jones, and Smith – the

24   Court found them lacking.  See ECF No. 49.  The District Judge agreed.  See ECF No. 51.

25   Regarding allegations in the first amended complaint against Defendant Honea, the Court

26   concluded:

27             . . .As with the original complaint, the first amended
                complaint does not outline any specific conduct on the part of defendant
28             Honea. Every reference to defendant Honea is made in the context of

plaintiff's various encounters with deputies.

ECF No. 49, pgs. 11-12.

Regarding Defendant Smith, the Court stated:

> In essence, plaintiff claims defendant Smith failed to investigate drug crimes allegedly committed by a white person because they were reported by plaintiff, who is not white. This claim does not even suggest any violation of plaintiff's civil rights as the person reporting crimes, let alone a causal nexus between defendant Smith and such violation. Plaintiff's unsupported belief fails to state a claim against defendant Smith.

Id. at 12.

Finally, as to Defendant Jones, the Court stated:

> According to plaintiff, he complained about improper treatment by sheriff's deputies and requested an internal investigation and that he was told an investigation would be conducted. See ECF No. 40, pg. 5. Plaintiff alleges that, when he called to follow up on the status of that investigation, he was told by defendant Jones that he was "frivolous and unfounded." Id. The Court agrees with defendants that these allegations fail[] to establish a causal nexus between defendant Jones' conduct and a constitutional violation.

Id.

Plaintiff's claims against Defendants Honea, Smith, and Jones were dismissed with leave to amend.  The question before the Court on the current motion, then, is whether Plaintiff's second amended complaint adds sufficient factual information to establish a causal nexus between an alleged constitutional violation and any of the three named supervisory defendants.  Given that the supervisory defendants are the only defendants who have been properly named in the second amended complaint, this question is dispositive of the entire case.

1.   Defendant Honea

Defendants argue:

> Sheriff Honea is not liable for the conduct of his subordinates and can only be held liable for his own conduct, such as implementing constitutionally deficient policies. Plaintiff provides no factual allegations regarding these Defendants failure to train the officers, ratified misconduct and perpetuated a culture, policy or practice of misconduct. There are no specific claims and Plaintiff's facts are conclusory. Plaintiff has not alleged a sufficient causal nexus between any alleged constitutional violation and the conduct of Sheriff Honea. Plaintiff has not alleged

19

Sheriff Honea was aware of any BCSO deputies conduct, or a failure to train theory of liability. Plaintiff's factually unsupported conclusions fall well short of the requirement that supervisory liability "must be specifically alleged," and are patently insufficient to state a § 1983 supervisory liability claim. The SAC copies all of the same claims against Sheriff Honea which were dismissed in the FAC and does not make any new claims against Sheriff Honea.

ECF No. 58-1, pgs. 14-15.

The Court agrees.  It is clear from the references to Honea, who is often labeled "BCSH," which Plaintiff defines to mean Butte County Sheriff Honea, that Plaintiff's claims against Honea are based on a respondeat superior theory of liability.  Plaintiff repeatedly refers to conduct of BCSH agents or officers.  Plaintiff also repeatedly alleges that Defendant Honea failed to properly train or supervise his deputies.  As with the first amended complaint, the current allegations against Defendant Honea are insufficient to establish his supervisory liability for claimed civil rights violations.

The only apparent reference to direct conduct on the part of Defendant Honea appears at page 9 of the second amended complaint in numbered paragraph 11 in which Plaintiff claims Defendant Honea said that Plaintiff was an "ass hole."  ECF No. 55, pg. 9.  Even if true, this allegation does not establish a connection to a constitutional violation.

Given that Plaintiff has twice been advised of the requirements for sufficiently pleading supervisor liability and given that Plaintiff has three times now failed to do so, the Court does not recommend further leave to amend.

2.    Defendant Jones

As to Defendant Jones, Defendants contend:

Plaintiff alleges he was told by Undersheriff Jones that an internal investigation about improper treatment by BCSO deputies was "frivolous and unfounded." (ECF 55 page 5.) Once again, there is no causal nexus between Undersheriff Jones' conduct and a constitutional violation. Plaintiff does not assert what constitutional violation was violated by Undersheriff Jones or how any of Plaintiff's involvement with BCSO deputies is connected to Undersheriff Jones to create a constitutional violation. Additionally, Plaintiff does not include any new arguments for Undersheriff Jones after the Court issued its Findings and Recommendations (ECF 49 page 12) and failed to establish a causal nexus. For the reasons described above, Undersheriff Jones must also be dismissed.

20

ECF No. 58-1, pg. 15.

As Defendants observe, Plaintiff's references in the second amended complaint to Defendant Jones are sparse indeed.  Plaintiff only references Jones in numbered paragraph 4 of the second amended complaint, alleging that Jones labeled Plaintiff's complaints of police misconduct "frivolous and unfounded."  ECF No. 55, pg. 5.  This allegation is the same as set forth in the first amended complaint, which was found insufficient.  Since dismissal of the first amended complaint with leave to amend, Plaintiff has failed to add any new material factual allegations which would establish Defendant Jones's liability.  Again, the Court declines to recommend further leave to amend.

3.    Defendant Smith

According to Defendants:

> Finally, Plaintiff alleged Lt. Smith failed to cooperate with the California Highway Patrol into investigation of what Plaintiff characterizes as a "drug operation." (ECF 55 page 8) Plaintiff states: "Lt. Smith did not want to cooperate with the CHP, because the criminal Cyrus is white, and the messenger was a brown and crazy sand nigger." (ECF 55 page 8) Plaintiff does not allege any additional facts to support the basis for his belief that Lt. Smith acted improperly against Plaintiff. Plaintiff's allegations do not stated [sic] that his constitutional rights were violated as the person reporting a crime. Furthermore, Plaintiff's allegations do not establish a causal nexus between Lt. Smith and such an alleged violation.

ECF No. 58-1, pg. 15

As in the first amended complaint, Plaintiff alleges in the second amended complaint that he "strongly believes" that Defendant Smooth did not want to cooperate with an investigation relating to "Cyrus" because he is white and Plaintiff is not.  ECF No. 55, pg. 8.  This is the extent of Plaintiff's allegations as to Smith.  The Court again finds the allegation insufficient.  In particular, Plaintiff's "strong belief" is not a fact and Plaintiff has alleged no facts to support it.  The Court does not recommend further leave to amend.

/ / /

/ / /

/ / /

21

## V.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1.      Defendants' motion to dismiss, ECF No. 58, be granted; and

2.      This action be dismissed in its entirety without further leave to amend and with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


Dated:  August 18, 2021

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE